**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAKOUR A. BROWN, | : | Civil No. 1:25-cv-458 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| C.O. SWARTZ, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Shakour Brown ("Brown"), an inmate housed, at all relevant times, at the State Correctional Institution, Benner Township, Pennsylvania ("SCI-Benner Township"), initiated this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, in the Centre County Court of Common Pleas. (Doc. 1-1). Defendants subsequently removed the action to this Court. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 33). Named as Defendants are Correctional Officer Swartz, Lieutenant Boal, current Secretary of the Department of Corrections ("DOC") Laurel Harry, former DOC Secretary George Little, Medical Director of the Central Office Erica Benning, Deputy Superintendent Grice, and Corrections Health Care Administrator ("CHCA") Kim Ardery, (collectively, the "moving Defendants"), and Correctional Officer Conklin, Dr. J. Howard, Physician's Assistant T. Talasky, Correctional Officer John Doe, and Superintendent John Doe.[1] (*Id.* at 3-7).

[1] To date, Defendants Conklin, Howard, Talasky, and the John Does have not been properly identified or served in this case, nor has an attorney entered an appearance on their behalf.

Presently before the Court is the moving Defendants' motion to dismiss the amended complaint in part pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Doc. 62). The motion is fully briefed and ripe for resolution.[3] For the reasons set forth below, the Court will grant the motion in part and deny it in part.

## I. Allegations of the Amended Complaint

The allegations of the amended complaint stem from an alleged use of force incident on June 8, 2023. (Doc. 33).

Brown was housed in a psychiatric observation cell ("POC") because he had begun a hunger strike. (*Id.* at 8). On June 8, 2023, Defendants Boal, Swartz, Conklin, and an unknown officer, arrived at the cell to escort Brown to a videoconference court hearing. (*Id.*). Brown alleges that Defendant Swartz "conducted a standard strip search [and] properly placed [him] in wrist restraints without incident." (*Id.*). Brown alleges that "Defendants" escorted him to and from the videoconference hearing "without incident." (*Id.* at 9). When they arrived back to his cell, Brown alleges that Defendant Swartz secured the cell door and "both officers" began to "excessively yank on the te[]ther to the wrist restraints" causing pain and two large lacerations to Brown's left wrist. (*Id.* at 9-10). Brown asserts

---

[2] The moving Defendants are not moving to dismiss the Eighth Amendment excessive force claim asserted against Defendant Swartz. (*See* Doc. 62, at 1; Doc. 70, at 2).

[3] Brown's brief in opposition to the moving Defendants' motion to dismiss contains facts that are not expressly set forth in the amended complaint. (*See* Doc. 67). The Court may not consider such allegations because a complaint cannot be amended by way of an opposition brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

that the restraints were removed and that he verbally complained to Defendant Boal about the assault. (*Id.* at 9).

Brown alleges that he waited in his cell for medical treatment. (*Id.*). While he was waiting, Brown asserts that the "same officers who caused the assault" returned to remove him from the cell. (*Id.*). However, Brown refused to be placed back in restraints. (*Id.*).

Physician's Assistant Talasky then arrived at Brown's cell to treat his injury and allegedly stated that he needed stitches. (*Id.* at 10). Brown alleges that Talasky did not return to treat the injury. (*Id.*).

Brown avers that Defendants Benning, Grice, Ardery, Howard, Talasky, and John Doe failed to provide adequate medical care. (*Id.* at 10-13). He alleges that these Defendants had to approve his placement in the POC, thus "giving them requisite knowledge of substantial excessive risk." (*Id.* at 12-13).

Brown next alleges that Defendants Little and Harry "failed to establish rules, regulations, policies and/or guidelines to prevent DOC employee[s] from creating [a] substantial risk of harm." (*Id.* at 15). He alleges that Defendants Little and Harry "failed to respond to the substantial 'risk of constitutionally cognizable harm' to plaintiff's health [ ] risk that is so great and obvious that their failure to respond constitutes deliberate indifference." (*Id.* at 16). Brown also alleges that Defendants Little and Harry "failed to properly supervise and discipline guards in the Department for the pattern of abuse of plaintiff." (*Id.* at 17).

Brown asserts that he has "filed several lawsuits on the Department of Corrections for violations of plaintiff['s] rights." (*Id.* at 17).

Based on these allegations, Brown alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. (*Id.* at 20). He also sets forth state law claims of intentional infliction of emotional distress ("IIED"), and assault and battery. (*Id.* at 18, 20).

For relief, Brown seeks compensatory and punitive damages. (*Id.* at 21).

## II. Legal Standard

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment

> would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III. <u>Discussion</u>

### A. <u>Official Capacity Claims</u>

The moving Defendants first argue that the claims against them in their official capacities must be dismissed. (Doc. 63, at 13).

The moving Defendants (DOC employees) acting in their official capacities, are not "persons" as that term is used in Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under [Section] 1983."). Consequently, Brown cannot maintain a Section 1983 claim for money damages against any DOC Defendant in his or her official capacity.

Furthermore, Brown's Section 1983 official capacity claims are barred by the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by the Framers, the respect and dignity of the states

> and protects the ability of the states "to govern in accordance with the will of their citizens."

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)).

Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). The DOC, as an agency of the Commonwealth of Pennsylvania, is entitled to the Commonwealth's Eleventh Amendment immunity. *See* 71 P.S. § 61(a) ("The executive and administrative work of this Commonwealth shall be performed by the…Department of Corrections…"); *Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (stating that "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity"); *see also Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" plaintiff's Section 1983 claims against the DOC).

The moving DOC Defendants are state officials for purposes of Section 1983. A suit for monetary damages against a state official in his or her official capacity "is not a suit against that official but rather is a suit against that official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (internal citation omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits…'generally represent only another way of pleading an action against an entity of which an officer is an

agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S 658, 690 n.55 (1978))). Therefore, Brown's official capacity claims for monetary damages against the moving DOC Defendants are the equivalent of claims against the Commonwealth and will be dismissed with prejudice. *See Will*, 491 U.S. at 66, 70-71.[4]

B. Personal Involvement of Defendants Little, Harry, Benning, Grice, Ardery, and Boal

To state a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must allege facts to support that each defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). The plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (alterations in original) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2005)). This means that each defendant must have played an affirmative part in the

[4] There are two circumstances where Eleventh Amendment immunity is waived or abrogated: where (1) the state waives its immunity or (2) Congress exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. *See Graham*, 473 U.S. at 169 ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). Neither circumstance exists here. The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). And Congress did not intend to abrogate a state's Eleventh's Amendment immunity by enacting Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 344-45 (1979). In addition, the Eleventh Amendment does not bar a "suit[ ] against state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). Brown's amended complaint does not request injunctive or prospective relief. (*See* Doc. 33, at 21).

complained-of misconduct. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'") (citations omitted); *Iqbal*, 556 U.S. at 677 ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct").

The requirement of personal involvement applies with equal force to supervisory defendants. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (liability must be demonstrated by showing that the defendant personally directed or, with actual knowledge, acquiesced in the conduct). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity, including identification of each defendant's actions upon which the claim is based, the factual basis for the defendant's knowledge of the wrongdoing of another if such knowledge is an element of the claim, and, to the extent possible, the time and place of relevant events. *See Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.

The moving Defendants move to dismiss certain claims against Defendants Little, Harry, Benning, Grice, Ardery, and Boal based on Brown's failure to allege their personal involvement. (Doc. 63, at 13-19).

### 1. Eighth Amendment Excessive Use of Force, IIED, and Assault & Battery Claims against Boal, Harry, Little, Benning, and Grice

The moving Defendants move to dismiss the excessive force, IIED, and assault and battery claims against Boal. (Doc. 63, at 16). In the amended complaint, Brown alleges that when the escorting officers (Defendants Boal, Swartz, and Conklin) brought him back to his cell on June 8, 2023, Defendant Swartz secured the cell door and "both officers" began to "excessively yank on the te[]ther to the wrist restraints" causing pain and two large lacerations to Brown's left wrist. (Doc. 33, at 8-10). Brown alleges that he "made several verbal complaints to Lt. Boal about the assault." (*Id.* at 9). He contends that "Defendants Lt. Boal, C.O. Swartz, C.O. Conklin used excessive force against him" and that "Defendants Lt. Boal, Swartz, Conklin together acted with a common purpose to commit assault and battery and IIED." (*Id.* at 11, 18). The amended complaint is not entirely clear as to Defendant Boal's actions, or lack of actions, during the June 8, 2023 incident. However, Brown does allege that Defendant Boal was an escorting officer on June 8, 2023 and was present during the alleged incident. When viewed in the light of the liberal pleading standards, the Court finds that the allegations in the amended complaint plausibly state that Defendant Boal was somehow involved in the excessive force event on June 8, 2023. The Court expects Defendant Boal's role to become clear during discovery. The Court will deny

the motion to dismiss the excessive force claim against Defendant Boal. However, as set forth below, the Court finds that the state tort claims of IIED and assault and battery are barred by sovereign immunity; therefore, these state tort claims against Defendant Boal will be dismissed with prejudice and without leave to amend.

The moving Defendants also seek to dismiss the excessive force, IIED, and assault and battery claims against Little, Harry, Benning, Grice, and Ardery. (Doc. 63, at 16). The amended complaint does not contain sufficient factual allegations that Defendants Little, Harry, Benning, Grice, and Ardery were involved in the excessive use of force incident on June 8, 2023. (*See* Doc. 33). Nor does the amended complaint sufficiently allege that Defendants Little, Harry, Benning, Grice, and Ardery committed assault and battery or caused intentional infliction of emotional distress. (*See id.*).

The Court will grant the motion to dismiss the excessive force, IIED, and assault and battery claims against Defendants Little, Harry, Benning, Grice, and Ardery. The excessive force claim against Defendants Little, Harry, Benning, Grice, and Ardery will be dismissed without prejudice and with leave to amend. Again, because the Court finds below that the state tort claims of IIED and assault and battery are barred by sovereign immunity, these claims against Defendants Little, Harry, Benning, Grice, and Ardery will be dismissed with prejudice and without leave to amend.

### 2. Eighth Amendment Failure to Train Claim against Harry and Little

In order to state a failure to train claim, a plaintiff must allege that the failure to train amounts to "deliberate indifference" to the rights of those with whom employees come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The failure to train employees ordinarily rises to deliberate indifference only when the failure has caused a pattern of violations. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). It is possible, however, to state a failure to train claim in the absence of a pattern of violations, where the need for training is "so obvious" that the failure to do so could be characterized as deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 62-63 (2011). In addition, the "identified deficiency in training must be closely related to the ultimate injury." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *City of Canton*, 489 U.S. at 391).

Brown alleges that Defendants Harry and Little "failed to properly supervise and discipline guards in the Department for the pattern of abuse of plaintiff." (Doc. 33, at 17). As former and current Secretary for the DOC, Defendants Harry and Little are allegedly "responsible for the overall operation of the Department." (*Id.* at 3-4). Brown alleges that Defendants Harry and Little "failed to establish rules, regulations, policies and/or guidelines to prevent DOC employee[s] from creating [a] substantial risk of harm." (*Id.* at 15). He also alleges that Defendants Little and Harry "failed to respond to the substantial 'risk of constitutionally cognizable harm' to plaintiff's health [ ] risk that is so great and obvious that their failure to respond constitutes deliberate indifference." (*Id.* at 16). The amended

complaint suggests that Defendants Harry and Little were aware of the pattern of abuse that Brown encountered at the hands of correctional officers because he has "filed several lawsuits on the Department of Corrections for violations of plaintiff['s] rights." (*Id.* at 17).

Liberally construing the amended complaint, Brown suggests that based upon the abuse he sustained at the hands of correctional officers, Defendants Harry and Little have failed to implement training for correctional officers as to how avoid substantial risks of harm to inmates. Although a close call, Brown has alleged enough facts to allow this claim to move into discovery. The motion to dismiss the failure to train claim against Defendants Harry and Little will be denied.

### 3. Additional Claims against Defendants Harry and Little

The moving Defendants also seek to dismiss the following "miscellaneous statements" against Harry and Little:

- that Harry and Little "failed to establish rules, regulations, policies and/or guidelines to prevent DOC employee[s] from creating [a] substantial risk of harm"
- that Harry and Little "failed to respond to the substantial 'risk of constitutionally cognizable harm' to plaintiff's health [ ] risk that is so great and obvious that their failure to respond constitutes deliberate indifference"
- that Harry and Little "were aware that unreasonable risk existed and they were deliberately indifferen[t] to that risk being legally responsible for plaintiff [and] failed to properly supervise and discipline guards in the Department for the pattern of abuse of plaintiff"

(Doc. 63, at 17-19) (citing Doc. 33, at 14-17, 19).

The moving Defendants argue that: (1) the supervisory statuses of Harry and Little are insufficient to establish their personal involvement; (2) there are no factual averments showing how Harry and Little were "aware" that unreasonable risks existed; (3) there are no facts showing how Harry and Little "failed to respond", and participation after-the-fact does not establish that they participated in, directed, or acquiesced in the events of June 8, 2023; and (4) there are no allegations that Brown was subjected to a pattern of abuse, and allegations that a superior failed to train or supervise are insufficient to establish their involvement. (Doc. 63, at 18-19).

A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode*, 845 F.2d at 1207. If Brown is attempting to set forth respondeat superior liability against Defendants Harry and Little (seeking to hold them liable based on their supervisory roles), this ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207.

Instead, if Brown seeks to hold Defendants Harry and Little liable as supervisors for unconstitutional acts by their subordinates, his allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable

under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

*Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).

For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient

to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting *Evancho*, 423 F.3d at 354). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Brown alleges that Defendants Harry and Little, acting with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused Brown to suffer harm. (Doc. 33, at 15-17). Brown also suggests that Defendants Harry and Little had actual knowledge of the wrongful conduct because he has "filed several lawsuits on the Department of Corrections for violations of plaintiff['s] rights." (*Id.* at 17).

Although another close question, the Court finds that Brown has pled a supervisory liability claim against Defendant Harry and Mason, and the claims against them will proceed. The Court will deny the motion to dismiss Harry and Little from this action.

C. Eighth Amendment Deliberate Indifference to Medical Care Claim

To establish an Eighth Amendment claim arising from deprivation of medical care, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials

that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Additionally, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." *Id.* (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere differences of opinion between the prison's medical staff and the inmate regarding diagnosis or treatment rendered does not support a constitutional violation. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *see also McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981). Courts are "reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) (quoting *United States ex rel. Walker v. Fayette County*, 599 F.2d 573,

575 (3d Cir. 1979)). Federal courts generally defer to prison medical staff with respect to diagnosing and treating prisoners, and "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Id.* (quoting *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

The moving Defendants move to dismiss the inadequate medical care claim against Harry, Little, Benning, Grice, Ardery, Boal, and Swartz for lack of personal involvement and for failure to state a claim. (Doc. 63, at 16-17, 19-21).

Brown alleges that Physician's Assistant Talasky treated him at his cell on June 8, 2023. (Doc. 33, at 10). He does not allege that Defendants Harry, Little, Benning, Grice, Ardery, Boal, and Swartz were involved in his medical care. By Brown's averments, Defendants Harry, Little, Benning, Grice, Ardery, Boal, and Swartz are not medical providers and have not treated him. Third Circuit precedent makes clear that "a non-medical prison official" cannot "be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference" when the "prisoner is under the care of medical experts" and the official does not have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding that non-physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already

being treated by the prison doctor). Additionally, Superintendents and CHCAs are "undisputably administrators, [and] not doctors." *Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005). Here, Defendants Harry, Little, Benning, Grice, Ardery, Boal, and Swartz are non-medical personnel.[5] As pled, the amended complaint does not allege that these non-medical Defendants acted with deliberate indifference to Brown's medical needs. The Court will grant the motion to dismiss the Eighth Amendment inadequate medical care claim against Defendants Harry, Little, Benning, Grice, Ardery, Boal, and Swartz without prejudice and with leave to amend.

D. Fourteenth Amendment Due Process Claim

In a conclusory fashion, Brown sets forth a Fourteenth Amendment due process claim; however, there are no allegations in support of this claim. (Doc. 33, at 20). The conduct in support of this Fourteenth Amendment claim is presumably based on the same conduct that Brown alleges in support of his Eighth Amendment claim. Brown does not indicate if he is asserting a Fourteenth Amendment procedural due process claim or a substantive due process claim. (*See id.*, stating that Brown alleges a violation of the "14th Amendment due process clause"). The Court interprets Brown's amended complaint as raising a Fourteenth Amendment substantive due process claim concerning the June 8,

---

[5] *See* Doc. 33, at 3-6 (identifying the Defendants as follows: George Little, former Secretary of Corrections; Laurel Harry, current Secretary of Corrections; Erica Benning, Medical Director of the Central Office; Grice, Deputy Superintendent of SCI-Benner Township; Kim Ardery, Corrections Health Care Administrator at SCI-Benner Township; Boal, Lieutenant at SCI-Benner Township; and Swartz, Correctional Officer at SCI-Benner Township).

2023 incident. To the extent that Brown is attempting to assert a substantive due process claim regarding June 8, 2023 incident, such a claim is barred by the more-specific-provision rule.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution contains both procedural and substantive protections. *See* U.S. Const. amend. XIV, § 1. The substantive component of the Due Process Clause safeguards against certain deprivations of individuals' "life, liberty, and property" by state actors "regardless of the fairness of the procedures used to implement them." *L.R. v. Sch. Dist. Of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). A substantive due process claim, however, cannot be maintained when the alleged constitutional violation is "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment." *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). In such situations, the claim must be analyzed under the rubric of the more specific constitutional provision rather than substantive due process, *see id.*, as substantive due process is an "unchartered area" with "scarce and open-ended" guideposts, *Collins*, 503 U.S. at 125. The "more-specific-provision rule" will often apply when the challenged conduct underlying the substantive due process claim is the same conduct that implicates a more explicit constitutional provision. *See Porter*, 974 F.3d at 448.

Insofar as Brown is asserting a substantive due process claim related to the June 8, 2023 incident, that claim is barred by the more-specific-provision rule. The Court will grant the motion to dismiss the Fourteenth Amendment substantive due process claim.

E. Conspiracy Claim

In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.*

Brown concluded that unidentified Defendants have conspired to violate his rights, yet he has failed to allege an agreement or plan formulated and executed by the moving Defendants to achieve this conspiracy. (Doc. 33, at 20). The amended complaint contains a single statement that Defendants engaged in a "conspiracy" but alleges no facts to bolster

this claim. (*Id.*). Brown does not identify the individuals who allegedly engaged in this conspiracy, and his claim amounts to nothing more than mere conjecture and bare speculation. The only potential reference to a conspiracy is Brown's allegation that "Defendants Lt. Boal, Swartz, [and] Conklin together acted with a common purpose to commit assault and battery and IIED." (*Id.* at 11, 18). This allegation only speculates that Defendants Boal, Swartz, and Conklin engaged in a conspiracy to violate his rights. No agreement to do an unlawful act nor to commit any overt acts in furtherance of a conspiracy are alleged. The law is clear that bare allegations of wrongdoing by a defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. *See Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (holding that conspiracy claims which are based upon a *pro se* plaintiff's subjective suspicions and unsupported speculation are properly dismissed under § 1915(d)). The amended complaint fails to allege a conspiracy claim, and this claim will be dismissed without prejudice and with leave to amend.

F. The Moving Defendants are Entitled to Sovereign Immunity on the State Tort Claims of Intentional Infliction of Emotional Distress and Assault & Battery

The moving Defendants argue that the state tort claims of intentional infliction of emotional distress and assault and battery must be dismissed because they are entitled to sovereign immunity on these claims. (Doc. 62, at 25-27).

In Pennsylvania, sovereign immunity applies to intentional torts committed by Commonwealth defendants acting in their individual capacities. *See Sears v. Mooney*, No.

1:17-cv-50, 2019 WL 6726839, at *17 (M.D. Pa. Dec. 11, 2019) (citation omitted). Sovereign immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting within the scope of their duties.'" *Larsen v. State Emps' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008). As a general matter, subject only to ten specific statutory exceptions not applicable here, this sovereign immunity bars state law tort claims like the one alleged here, since Commonwealth employees are immune from liability for either negligence or intentional torts.[6] *McGrath v. Johnson*, 67 F.Supp.2d 499, 511 (E.D. Pa. 1999), *aff'd*, 35 F. App'x 357 (3d Cir. 2002). Here, the allegations of the amended complaint imply that the moving Defendants were acting within the scope of their employment. Accordingly, they are entitled to sovereign immunity. Thus, the Court will grant the moving Defendants' motion to dismiss the state tort claims of intentional infliction of emotional distress and assault and battery. These claims will be dismissed with prejudice and without leave to amend.

---

6 The ten categories for which sovereign immunity will not apply are: (1) vehicles in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. *See* 42 PA. CONS. STAT. ANN. § 8522(b).

G. Motion to Strike Under Federal Rule of Civil Procedure 12(f)

The moving Defendants request that the Court strike, as irrelevant or immaterial, the references to and summarization of case law in the amended complaint. (Doc. 62, at 27-28 (moving to strike portions of pages 2, 12, 14, and 18 of the amended complaint)).

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief." *Del. Health Care Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1292 (D. Del. 1995). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *In re Shannopin Mining Co.*, No. 96-cv-02185, 2002 WL 31002883, at *28 (W.D. Pa. July 15, 2002). "A 'scandalous' matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988).

"The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Simmons v. Simpson House, Inc.*, 224 F. Supp. 3d 406, 421 (E.D. Pa. 2016) (quotation and citation omitted). "Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id.* (quotation and citation omitted). "Motions to

strike are decided on the pleadings alone[ ] and should not be granted unless the relevant insufficiency is 'clearly apparent.'" *Thomas v. Keystone Real Est. Grp.*, No. 14-cv-00543, 2015 WL 1471273, at *6 (M.D. Pa. Mar. 31, 2015) (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)).

The Court will not strike pages 2, 12, 14, and 18 of the amended complaint. As stated, Rule 12(f) relief will be denied unless the allegations have no possible relation to the matter at hand. *See Simmons*, 224 F. Supp. 3d at 421. Brown's summarization of case law is not so immaterial or irrelevant that it has no relationship to the claim for relief. *See Mifflinburg Tel., Inc. v. Criswell*, 80 F. Supp. 3d 566, 572 (M.D. Pa. 2015) (citations omitted) (as a general rule, motions to strike are disfavored, and "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some significant form of prejudice to one of the parties to the action"). The Court will deny Defendants' motion to strike.

H. <u>Federal Rule of Civil Procedure 10(b)</u>

The moving Defendants argue that Brown's amended complaint should be stricken in its entirety, or he should be ordered to file another amended complaint, due to his violation of Federal Rule of Civil Procedure 10(b), which requires plaintiffs to state claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b); (*see also* Doc. 63, at 28-29).

In reviewing Brown's amended complaint, he fails to adhere to Rule 10(b)—he does not present his claims in separately numbered paragraphs, or even paragraphs at all; his amended complaint is more of a narrative. However, in light of Brown's *pro se* status, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and the fact that the moving Defendants have successfully read through the amended complaint and filed the pending motion seeking to dismiss the claims in part, the Court will not strike the amended complaint or direct Brown to file another amended complaint on the basis of a Rule 10(b) violation. The Court will deny the moving Defendants' motion to dismiss on this ground.

## IV. <u>Leave to Amend</u>

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant leave to amend unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). The Court finds that amendment of the following claims would be both futile and inequitable because they are factually and/or legally flawed—(1) the official capacity claims for monetary damages against the moving DOC Defendants; (2) the Fourteenth Amendment substantive due process claim; and (3) the state tort claims of intentional infliction of emotional distress and assault and battery based on sovereign immunity.

However, the Court will grant Brown leave to amend the following claims: (1) the excessive force claim against Defendants Little, Harry, Benning, Grice, and Ardery; (2) the

Eighth Amendment inadequate medical care claim against Defendants Harry, Little, Benning, Grice, Ardery, Boal, and Swartz; and (3) the conspiracy claim.

## V. **Conclusion**

Consistent with the foregoing, the moving Defendants' partial motion to dismiss will be granted in part and denied in part. (Doc. 62). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: August 6, 2026